Martínez Torres, Juez Ponente
*956 TEXTO COMPLETO DE LA SENTENCIA
El señor José Luis Cotto Ramos comparece ante nos para solicitar que revoquemos una sentencia emitida por el Tribunal de Primera Instancia, Sala de Fajardo, el 16 de enero de 2007. En la referida sentencia, el tribunal a quo declaró culpable al apelante por infracción al Art. 7.02 de la Ley de Tránsito, Ley Núm. 22 de 7 de enero de 2000, según enmendada, 9 L.P.R.A. see. 5202, por conducir su vehículo de motor bajo los efectos de bebidas embriagantes. Por ser primer ofensor, se le sentenció al pago de una multa de quinientos dólares ($500) o un día de cárcel por cada cincuenta dólares ($50) no satisfechos. Además, se le impuso una pena especial de cien dólares ($100) y se le suspendió el uso de su licencia de conducir por un término de treinta (30) días. Finalmente, el tribunal le impuso diez (10) días de cárcel, los cuales fueron suspendidos, sujeto a que completara satisfactoriamente el curso del programa de rehabilitación que recomendara la Administración de Servicios de Salud Mental y contra la Adicción (ASSMCA).
Por los fundamentos que a continuación expondremos, confirmamos la sentencia apelada.
I
Por hechos ocurridos el 28 de septiembre de 2006 a las ll:20pm, en la carretera Fernández del Municipio de Luquillo, se determinó causa para arresto y procesamiento por infracción al Art. 7.02 de la Ley de Tránsito, supra. Según surge de la denuncia, en la fecha y hora antes indicada, frente al parque de pelota de Luquillo, el señor José Luis Cotto Ramos conducía su vehículo de motor “zigzagueando” entre los dos carriles de la carretera. Una vez detenido por la Policía, se le realizó la pmeba de aliento, la cual arrojó .180% de alcohol.
El juicio se celebró el 16 de enero de 2007. Desfilada la prueba de cargo y sometido el caso, el TPI declaró culpable al apelante por el delito imputado. Por ser primer ofensor, se le sentenció al pago de una multa de quinientos dólares ($500) o un día de cárcel por cada cincuenta dólares ($50) no satisfechos. Además, se le impuso una pena especial de cien dólares ($100) y se le suspendió el uso de su licencia de conducir por un término de treinta (30) días. Finalmente, el tribunal le impuso diez (10) días de cárcel, los cuales fueron suspendidos, sujeto a que completara satisfactoriamente el curso del programa de rehabilitación que recomendara la Administración de Servicios de Salud Mental y contra la Adicción (ASSMCA).
Inconforme, el señor Cotto Ramos acude ante nos mediante el presente recurso en el que alega que erró el TPI al:

“1. declarar culpable al acusado aun cuando no se le dio cumplimiento al reglamento para la administración de la prueba del Intoxilizer 5000E.N.

2. declarar culpable al acusado al no admitir unas fotos que ilustraban la inexistencia de carriles, fundamento utilizado por el agente investigador para la detención del acusado.

3. sentenciar al acusado sin seguir el procedimiento post-sentencia de la Ley de Tránsito en casos de embriaguez.

4. encontrar culpable al acusado aun cuando no se dio cumplimiento al Art. 3.02(h) de la Ley de Tránsito. ”

*957 II
La Ley Núm. 22 de 7 de enero de 2000, supra, en su Capítulo VI, se encarga de regular todo lo referente a la conducción de vehículos de motor bajo los efectos de bebidas embriagantes, en lo pertinente los artículos 7.01 y 7.02 del estatuto rezan:

“Artículo 7.01 - Constituye la posición oficial y política pública del Gobierno del Estado Libre Asociado de Puerto Rico, que el manejo de vehículos o vehículos de motor en las vías públicas bajo los efectos de bebidas embriagantes, drogas o sustancias controladas, constituye una amenaza de primer orden a la seguridad pública y que los recursos del Estado irán dirigidos a combatir; en la forma más completa, decisiva y enérgica posible, con miras a la pronta y total erradicación, de esta conducta antisocial y criminal que amenaza las vidas y propiedades de todos los ciudadanos, así como la tranquilidad y la paz social.

A tenor con lo dispuesto, será ilegal que cualquier persona bajo los efectos de bebidas embriagantes, drogas o sustancias controladas conduzca, haga funcionar cualquier vehículo o vehículo de motor, o posea cualquier envase abierto que contenga bebidas embriagantes en el área de pasajeros de cualquier vehículo o vehículo de motor.

Artículo 7.02 - En cualquier proceso criminal por infracción a las disposiciones del Artículo 7.01 de este título, el nivel o concentración de alcohol existente en la sangre del conductor al tiempo en que se cometiera la alegada infracción, según surja tal nivel o concentración del análisis químico o físico de su sangre, de su aliento, o cualquier sustancia de su cuerpo constituirá base para lo siguiente:

(a) Es ilegal per se, que cualquier persona mayor de dieciocho (18) años de edad conduzca o haga funcionar un vehículo de motor, cuando su contenido de alcohol en su sangre sea de ocho (8) centésimas del uno (1) por ciento (.08%), o más, según surja tal nivel o concentración del análisis químico o físico de su sangre, o de su aliento.

(b)...

(c)...”

Las disposiciones de los anteriores incisos (a), (b), y (c) no deberán interpretarse en el sentido de que las mismas limitan la presentación de cualquier otra evidencia competente sobre sí el conductor estaba o no bajo los efectos de bebidas embriagantes al tiempo de cometerse la alegada infracción.
De igual forma, el Artículo 7.09 del mencionado capítulo establece en cuanto a los análisis químicos lo siguiente:

“Se considerará que toda persona que transite por las vías públicas de Puerto Rico conduciendo un vehículo o un vehículo de motor o un vehículo pesado de motor habrá prestado su consentimiento a someterse a un análisis químico o físico de su sangre, o de su aliento o de cualquier sustancia de su cuerpo, para los fines que se expresan en esta sección, así como una prueba inicial del aliento a ser practicada en el lugar de la detención por el agente del orden público o cualquier otro funcionario autorizado por ley. ”

Con relación a los procedimientos bajo esta sección, se seguirán las siguientes normas:

“(a) Se entenderá que el referido consentimiento queda prestado para cualesquiera de los análisis estatuidos y que la persona que fuere requerida, se someterá al análisis que determine el oficial del orden público que realice la intervención.

*958
(b)...

(c) Cualquier agente del orden publico o funcionario debidamente autorizado por ley deberá requerir de cualquier conductor que se someta a cualesquiera de dichos análisis químicos o físicos después de haberle detenido si tiene motivo fundado para creer que dicha persona conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes, drogas o sustancias controladas, o cuando habiendo sido detenido por razón de una posible infracción a la ley o a las leyes de servicio público y sus reglamentos, existieren motivos fundados para creer que conducía o hacía funcionar un vehículo bajo los efectos de bebidas embriagantes, drogas o sustancias controladas al tiempo de su detención.

(d)...

(e) Además de lo dispuesto en el inciso (c) de esta sección, cualquier agente del orden público podrá requerirle a cualquier persona que esté conduciendo o haciendo funcionar un vehículo de motor que se someta a una prueba inicial del aliento o prueba a ser practicada en el lugar de la detención, si dicho agente:

(1) Tiene motivo fundado para sospechar que la persona ha ingerido alcohol o ha utilizado sustancias controladas.

(2) Si ocurre un accidente y la persona se hallaba conduciendo uno de los vehículos involucrados en el accidente.

(f) Si el resultado de la prueba inicial del aliento o cualquier otro análisis indicare una posible concentración de ocho centésimas (0.08) o más del uno por ciento (1%) de alcohol por volumen, [...]; Disponiéndose, que el agente del orden público le podrá requerir al conductor que se someta a un análisis posterior, el resultado del mismo podrá ser utilizado para demostrar que la persona ha estado conduciendo en violación a los artículos 7.01 a 7.09 de este título. De resultar con una concentración menor a la indicada anteriormente, excepto en el caso de menores de dieciocho (18) años, se concluirá que la persona detenida o arrestada no ha estado conduciendo o haciendo funcionar un vehículo bajo los efectos de bebidas embriagantes.

[...]

El Superintendente de la Policía de Puerto Rico en conjunto con el Departamento de Salud deberá aprobar un reglamento que sea aplicable al proceso de estas pruebas de campo; y un procedimiento para la obtención de las muestras de orina requeridas por esta sección. Además, éste deberá adoptar el reglamento dentro de un término de noventa (90) días luego de la vigencia de esta ley.

(g) i..]”.

Como se puede observar, la Ley Núm. 22, supra, establece varios mecanismos que pueden ser utilizados por el funcionario del orden público, persona autorizada por ley, para realizar las pruebas de alcohol, drogas o sustancias controladas. Específicamente, en cuanto a las pmebas de alcohol se refiere, es harto conocido que la utilizada con más frecuencia por estos funcionarios es la prueba del aliento.
Con el propósito de establecer el procedimiento concreto sobre si los instrumentos de pruebas y su uso son unos adecuados, en el Reglamento Núm. 6346 del Departamento de Salud (en adelante, el Reglamento) fue incluido el Artículo VII sobre regulación de análisis de aliento para determinar el nivel o concentración de alcohol en la sangre.
Dicha disposición reglamentaria, en principio, estableció normas referentes a la adopción de equipos para *959 realizar pruebas de aliento. De esta forma, incluyó como parte del artículo las siguientes secciones:

“8.01 [...]

8.02 Para analizar las muestras de aliento se utilizarán instrumentos científicos diseñados para dicho propósito y que hayan sido previamente aprobados por el Secretario de Salud o su Representante.

8.03 [...]

8.04 Se adopta y se hace formar parte de este Reglamento la utilización del instrumento Intoxilyzer 5000, previamente aprobado, para la realización de las pruebas de aliento antes mencionadas.

8.05 También se adopta el uso del instrumento Aleo-Sensor e instrumentos similares para la realización de pruebas preliminares de aliento... ”.

Como parte de este artículo también fue incluido un inciso titulado Pruebas con el “Intoxilyzer - 5000” o cualquier otro instrumento aceptado en el futuro para pruebas de aliento, allí incluyó las siguientes secciones:

“8.14 Antes de realizar una prueba con el “Intoxilyzer”, la persona intervenida se mantendrá bajo observación por un período mínimo de veinte (20) minutos, contados a partir de la hora de la intervención, para asegurarse de que no existe alcohol residual en su boca al momento de efectuarse el análisis.

8.15 Durante esos veinte (20) minutos, la persona se mantendrá bajo observación; evitando que fume, ingiera alimentos o se provoque vómito. De ocurrir uno de los anteriores, deberá esperar veinte (20) minutos adicionales a partir de la hora en que ocurrió el evento, lo cual se documentará por el agente interventor y/o el operador del instrumento encargado de realizar la prueba.

8.16 Para efectuar la prueba de aliento, el operador del instrumento seguirá los pasos operacionales que aparecen en el Informe sobre Prueba de Alcohol por Aliento y Lista de Cotejo Operacional.

8.17 Una vez concluido el análisis, el agente entregará una copia del Informe sobre Prueba de Aliento y copia de la Tarjeta de Récord de Prueba al intervenido. Copia de los documentos mencionados le será enviada al Fiscal de Distrito del lugar donde ocurrieron los hechos y otra copia será retenida por la Policía de Puerto Rico o cuerpo del orden público.

8.18 Los resultados de los análisis mencionados serán aceptados por el magistrado como evidencia prima facie para la determinación de causa probable para el arresto.

[...]

8.23 Los artículos 8.14 y 8.15 aplicarán a toda prueba realizada con el Aleo-Sensor o instrumento similar. ”

III
En su primer señalamiento de error, el apelante alega que el Estado incumplió con el procedimiento establecido en el Reglamento 6346 del Departamento de Salud, el cual requiere que se esperen 20 minutos desde que ocurrió el evento, para que se realice la prueba de aliento a la persona intervenida. Alega el señor Cotto Ramos que, debido a que el agente que le realizó la prueba se encontraba solo en el cuartel ese día, era imposible que éste lo mantuviera en observación durante 20 minutos, ya que el cuarto donde está localizada la máquina se encuentra separado del área del retén. Continúa indicando que el intervalo de tiempo de los 20 minutos requeridos quedó interrumpido cuando el agente Reyes entró a calibrar la máquina Intoxilyzer en el cuarto contiguo al área *960 del retén. Fundamenta su planteamiento en el hecho de que el Agente Reyes aceptó en su testimonio que durante el período de 1 l:50pm a las 12:02am no se mantuvo observando al detenido.
En el caso de autos, es de particular importancia observar los testimonios ofrecidos durante el juicio, por lo que a continuación expondremos de forma suscinta las declaraciones de las partes.
Durante su testimonio, el Agente Reyes declaró que el día de los hechos se encontraba realizando funciones de retén en la División de Tránsito de Fajardo; que el Agente Mangual llegó con el señor Cotto a donde estaba el retén como a las 1 l:30pm; que a esa hora comenzó a efectuar los pasos operacionales para realizarle la prueba de aliento al detenido; que a las 1 l:50pm entró al cuarto donde se encuentra la máquina Intoxilyzer a calibrarla; que durante todo ese tiempo, el detenido estuvo sentado en un banco frente a él y bajo su supervisión; que a las 12:02am le realizó la prueba de aliento al apelante; y a las 12:03am la máquina arrojó el resultado. (Transcripción de la prueba oral, págs. 53-55 y 62-63).
El Agente Mangual, por su parte, declaró que cuando llegó al cuartel con el detenido, observó que éste se sentó en un banco y el Agente Reyes “comienza a, a darme unos 20 minutos para observar el comportamiento del caballero”. (T.P.O., págs. 17-18). Posteriormente, en el contrainterrogatorio indicó que, una vez él llegó al cuartel, comenzaron a correr los 20 minutos de observación. (T.P.O., pág. 43)
Ambos testigos coinciden en que desde el momento en que se detuvo al apelante a las ll:30pm hasta que se le efectuó la prueba de aliento a las 12:02am, éste estuvo bajo la observación del Agente Reyes. A su vez, coinciden en que a la hora que el agente se fue al cuarto a calibrar la máquina, a las ll:50pm, ya se habían cumplido los 20 minutos de observación previa que requiere el Reglamento, supra. Estas declaraciones derrotan la teoría del apelante de que a las 11:45 ó 11:50pm, cuando el apelante entró al cuartito a preparar la máquina, los 20 minutos se interrumpieron, por lo que debieron empezar a contar nuevamente de las 1 l:50pm en adelante.
En el caso de marras, el foro de instancia, luego de adjudicar la credibilidad que le merecieron los testigos, entendió que el apelante estuvo en observación por el Agente Reyes durante los 20 minutos requeridos por ley desde el momento en que se intervino con él hasta que se le realizó la prueba de aliento. Es doctrina ampliamente reconocida en nuestro ordenamiento jurídico procesal que los tribunales apelativos debemos mantener la norma de deferencia judicial en cuanto a la apreciación de la prueba oral que hizo el juzgador de instancia. Dicha norma jurídica establece que la apreciación de la prueba realizada por el tribunal sentenciador y la credibilidad que dicho foro otorgue a la prueba debe ser objeto de gran deferencia por los tribunales apelativos, los cuales, en ausencia de circunstancias extraordinarias o que demuestren que el tribunal apelado actuó movido por la pasión, el prejuicio, la parcialidad, o error manifiesto, no deben intervenir con las determinaciones de hechos de este último. Colón González v. K-Mart, 154 D.P.R. 510 (2001); Trinidad García v. Chade, 153 D.P.R. 280 (2001); Municipio de Ponce v. Autoridad de Carreteras y Transportación, 153 D.P.R. 1 (2000): Monllor Arzola v. Soc. Legal de Gananciales, 138 D.P.R. 600 (1995); Pérez Cruz v. Hosp. La Concepción, 115 D.P.R. 721 (1984). Por lo tanto, concluimos que el error número 1 no fire cometido.

TV

El segundo y el cuarto error están íntimamente relacionados, por lo que los discutiremos conjuntamente. Estos van dirigidos a impugnar la decisión del tribunal a quo de excluir unas fotografías que fueron ofrecidas en evidencia por el apelante, por encontrarlas impertinentes. El señor Cotto aduce que las fotografías excluidas eran pertinentes para demostrar que la carretera donde fue intervenido carece de líneas divisorias como requiere el Artículo 6.06 de la Ley de Tránsito, supra. Indica que esto demuestra la falta de justificación legal del agente para intervenir con él. Alega, además, que en el boleto administrativo expedido el Agente Mangual no especificó qué inciso del Artículo 6.06, supra, específicamente había sido violado. Añade que la vaguedad de la información que contiene el referido boleto contraviene el requisito de especificidad al que tiene derecho todo conductor, según el Artículo 3.02 (h) de la Ley de Tránsito, supra. No le asiste la razón.
*961 La Regla 18 de Evidencia, 32 L.P.R.A. Ap. IV, R. 18, establece que toda evidencia pertinente es admisible, siempre que la ley o las reglas de evidencia no dispongan lo contrario. Evidencia pertinente es aquella tendente a hacer más o menos probable un hecho y que dicho hecho se refiera a una cuestión en controversia o sobre la credibilidad de un testimonio. De acuerdo con la Regla 80 de Evidencia, id., R. 80, siempre que un objeto perceptible a los sentidos resultare pertinente de conformidad con lo dispuesto en la Regla 18, éste, previa identificación o autenticación, es admisible como evidencia sujeto a la discreción del tribunal, de conformidad con los factores o criterios establecidos en la Regla 19, id., R. 19. Esto es, una vez superados los problemas de pertinencia y autenticación, el tribunal deberá sopesar el valor probatorio de la evidencia demostrativa vis a vis el perjuicio, la confusión o la desorientación que podría acarrear su admisión. Pueblo v. Echevarría Rodríguez I, 128 D.P.R. 299 (1991).
La Regla 19 de Evidencia, supra, dispone que “evidencia pertinente puede ser excluida cuando su valor probatorio es de poca significación en relación a cualesquiera de estos factores: a) peligro de causar perjuicio indebido; b) probabilidad de confusión; c) desorientación del jurado; d) dilación de los procedimientos; e) innecesaria acumulación de prueba acumulativa”.
Esta regla establece un principio de exclusión discrecional, pues a diferencia de las demás reglas de exclusión, se trata de una norma potestativa y no mandatoria. E.L. Chiesa, Práctica Procesal Puertorriqueña: Evidencia, San Juan, Publicaciones JTS, 1985, Vol. I, pág. 62. Le permite a los tribunales de instancia excluir discrecionalmente la evidencia pertinente luego de sopesar el valor probatorio de la evidencia frente a los otros factores de exclusión señalados en la regla.
Al ejercer el balance de intereses de la Regla 19 de Evidencia, supra, se le reconoce a los tribunales de instancia una amplia discreción y se le confiere gran deferencia a sus determinaciones. Como regla general, no se interviene con tales determinaciones, salvo en casos de abuso de discreción. Pueblo v. Rivera Nazario, 141 D.P.R. 865, 893 (1996).
Por su parte, la Regla 80 de Evidencia, supra, regula liberalmente la admisibilidad de la evidencia demostrativa. Esta evidencia se divide en real e ilustrativa. La demostrativa real (u original), por propia definición, juega un papel central y directo en el asunto que sea objeto de la controversia. Por lo contrario, la evidencia demostrativa ilustrativa es únicamente para enseñar, instruir, representar o hacer comprensible un testimonio u otra evidencia.
En Pueblo v. Nazario Hernández, 138 D.P.R. 760 (1995), citando al Profesor Chiesa, respecto a la diferencia sobre el uso de estos tipos de evidencia demostrativa, se dijo que en el caso de evidencia ilustrativa, el proponente debe establecer que tal evidencia es de ayuda al juzgador para entender otra evidencia, particularmente el testimonio de un testigo. “Lo único importante es que el tribunal entienda que la evidencia ilustrativa hace más comprensible la otra evidencia. ” Id., a la pág. 775.
El Tribunal Supremo de Puerto Rico ha sostenido que las fotografías son un tipo de evidencia demostrativa de inmenso valor probatorio cuando éstas se presentan para fines de, entre otras cosas: (1) ilustrar los hechos esenciales sobre los cuales han declarado los testigos; (2) demostrar lesiones sufridas; (3) ilustrar las características físicas del lugar del crimen, el sitio desde donde observó un testigo y el lugar donde cayó la víctima, o para corroborar la veracidad de lo declarado en cuanto a “la localización geográfica de un edificio, la escena del crimen y áreas susceptibles de percepción visual por el supuesto testigo ”. Pueblo v. Rivera Nazario, supra, a la pág. 894.
La autenticación, como requisito previo a la admisibilidad, es una condición de hecho que debe quedar demostrada por el proponente de la evidencia a base de un testimonio base que se le presenta al tribunal. A través de ese testimonio debe definirse la autenticidad y ,por ende, la pertinencia de la evidencia en cuestión.
*962 La contención principal en este señalamiento de error gira en tomo a la autenticación de unas fotografías que el TPI, en el ejercicio de su discreción, excluyó por entender que el testimonio base no satisfizo el criterio de evidencia suficiente para sostener que las fotos en cuestión son lo que el proponente sostiene: que reflejan fiel y exactamente cómo estaba el sitio el día de los hechos y cuándo se tomaron las mismas.
Para tomar su determinación, el TPI descansó, entre otros criterios, en el testimonio del testigo, el Agente Mangual, en el cual aceptó que las fotografías ofrecidas en evidencia no mostraban el área exacta donde intervino con el apelante el día de los hechos, sino meramente un tramo de la carretera. En consideración a ello, el foro a quo denegó la admisión de las fotografías, por no ser pertinentes al asunto en controversia. (T.P.O., a las págs. 34-39)
El proceso que culminó en la exclusión de las fotografías en este caso hay que analizarlo, además, en el contexto de la evidencia demostrativa ilustrativa. A nuestro entender, las fotos ofrecidas en evidencia por la defensa no juegan un papel central y directo en el caso, sino que se presentaron únicamente para instmir, representar o hacer más comprensible un testimonio u otra evidencia. En consideración a ello, el TPI, en el amplio ejercicio de su discreción, concluyó que el proponente de las fotografías no estableció que iban a ser de ayuda. Es decir, el tribunal razonablemente entendió que el valor probatorio era de poca significación porque las fotos no reflejaban la parte exacta de la carretera donde el agente intervino con el apelante. El testimonio del Agente Mangual —el cual le mereció credibilidad al juzgador de los hechos — , fue suficiente por sí sólo para demostrar el hecho de la infracción cometida por el señor Cotto.
En resumen, el TPI —tratándose de evidencia demostrativa ilustrativa — , optó por la inadmisibilidad de la evidencia. Por ello, no habremos de intervenir con el ejercicio de su discreción. De todos modos, entendemos que la actuación del TPI de excluir la fotografía no es un error perjudicial porque no altera el resultado del caso.
Por otro lado, entendemos incorrecta la alegación del apelante de que, ya que el boleto administrativo no especificaba el inciso del Artículo 6.06 de la Ley de Tránsito, supra, que se violó, ello hace de por sí indebida la intervención del agente con el apelante.
Del expediente se desprende que la defensa tuvo la oportunidad de interrogar al Agente Mangual, quien específicamente declaró que tuvo motivos fundados para detener al señor Cotto al observar que éste conducía de manera errática moviéndose de un carril a otro. El hecho de que el Agente Mangual no indicara en el boleto administrativo el inciso específico del Artículo 6.06, supra, que fue infringido, es irrelevante. El testimonio del agente logró sentar las bases racionales para creer que en su presencia se cometió una falta que acarreaba una sanción administrativa al amparo del Artículo 6.06 de la Ley de Tránsito, supra, y que justificaba la detención del apelante. Por otro lado, la conclusión respecto a cuál inciso específicamente violó el señor Cotto es una cuestión de derecho a ser determinada por el juzgador de los hechos. Por lo tanto, concluimos que los señalamientos de error números dos y cuatro no se cometieron.
y
Por último, en su tercer error el apelante alega que incidió el TPI al sentenciar al acusado sin seguir el procedimiento post-sentencia de la Ley de Tránsito en casos de embriaguez. Argumenta que en el presente caso —y luego de advenir el fallo de culpabilidad — , el tribunal procedió a imponerle una multa y suspenderle la licencia por un término de 30 días, sin antes haber sido evaluado por un profesional en el ramo de la conducta humana para saber si debía ser sometido al curso para el mejoramiento de conductores de la Administración de Servicios de Salud Mental (ASSMCA) o del Departamento de Transportación y Obras Públicas. Añade, a su vez, que entregó su licencia el día que se emitió la sentencia en el caso y que al presente han transcurrido nueve (9) meses en exceso del término establecido y no se le ha entregado la misma, en violación del debido proceso de ley.
Entendemos que la alegación del apelante en cuanto a la extensión ilegítima de su sentencia es académica, ya *963 que con excepción del pago de la multa impuesta, la misma ya fue satisfecha. En lo que respecta a los tratamientos a los que debió haber sido sometido, surge del expediente ante nos que el tribunal le ordenó al apelante comparecer ante ASSMCA para beneficiarse de los programas de rehabilitación ofrecidos por dicha agencia. No obstante, aunque entendiéramos que el tribunal erró al emitir la sentencia sin tener el beneficio de un informe sometido por ASSMCA, entendemos que el veredicto en el caso fue correcto y conforme a derecho y, como dijéramos anteriormente, la pena ya fue satisfecha. El propósito de dicha disposición legal es que pueda hacerse una determinación previa a la sentencia, en términos de si la persona convicta necesita beneficiarse de los programas de rehabilitación provistos por ASSMCA antes de que se le restituya su licencia de conducir. En el caso de autos, en vista de que tal y como alega el apelante, el término de la pena impuesta ya transcurrió, lo que resta es que el apelante solicite al Departamento de Transportación y Obras Públicas la restitución de su licencia de conducir. Cualquier otra discusión es académica.
VI
Por los fundamentos antes expuestos, se confirma la sentencia apelada.
Lo acordó y ordena el Tribunal, y lo certifica la Secretaria del Tribunal.
María E. Pérez Ortiz
Secretaria del Tribunal de Apelaciones